## BARKMAN v. SANFORD.
### No. 11941.

Circuit Court of Appeals, Fifth Circuit.
June 24, 1947.

David B. Alford, of Middleburg, N. Y., for appellant.

J. Ellis Mundy, U. S. Atty., Joel B. Mallet and Harvey H. Tysinger, Asst. U. S. Attys., all of Atlanta, Ga., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The sole question presented by this appeal is, do subsections (a) and (b) of Rule 7, Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, authorizing the prosecution of a defendant, in a noncapital felony, upon information, provided he waives an indictment by a grand jury, violate the provision of the Fifth Amendment that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"?

The information in the present case charged the Petitioner with a noncapital felony, punishable by imprisonment for

more than one year, and, therefore, an infamous crime. Antecedent to the filing of the information, Petitioner had waived the right to be tried under an indictment and had consented to be tried under the information. He then entered a plea of guilty and received the sentence from which he now seeks his release by habeas corpus. He asserts that the constitutional provision for an indictment upon which to try one for an infamous crime is not a personal right that may be waived but that it is jurisdictional—a limitation upon the court rather than a privilege to the defendant. He insists that in words and in substance there is a difference between prohibitions in limitation of the court's power and rights inhering in the individual such as right to trial by jury, the right to have counsel, the right to be confronted by witnesses, the right to have a speedy trial, and the like, which concededly may be waived.

In a discussion of the question it is appropriate that sight be not lost of certain considerations, viz.:

(a) That jurisdiction cannot be conferred upon a federal court by consent, for its jurisdiction springs wholly from the Constitution and statutes of the United States;

(b) That neither Congress nor the Supreme Court can alter such jurisdiction of such courts as is prescribed by the Constitution;

(c) That the rule here under assault was approved and projected by the Supreme Court under purported authorization by Congress;

(d) That Congress reserved the power to veto the rule but failed to do so, thereby according to it the sanctity of legislative acquiescence and rendering it appropriate that we consider it as a legislative enactment of the usual pattern, carrying with it the shield of presumptive validity.

The fact that the rule was approved and proposed by the Supreme Court also supplies it with an armor of great, but not complete, invincibility. The fact that a rule was promulgated by the Supreme Court does not raise it above the Constitution, nevertheless, the source of the rule is such as to suggest strongly that all who enter into its forum of controversy should tread lightly even though we consider it merely as a congressional enactment. Cf. Harris v. Zion's Savings Bank & Trust Co., 10 Cir., 127 F.2d 1012; In re Bronx Ice Cream Co., 2 Cir., 66 F.2d 620.

It must be conceded, also, that if the Fifth Amendment is a limitation upon the power, or jurisdiction, of the federal courts, the waiver by Petitioner would be ineffective and his conviction and sentence illegal.

On the other hand, if the constitutional provision was designed merely to confer a right or privilege upon the person, then it could be waived in the same fashion as can a trial by jury [Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263]; a right to have counsel [Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; and a right to be confronted by witnesses [Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500, Ann.Cas.1913C, 1138].

In addition to the provision that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," it is well to observe that the four other protective provisions of the Fifth Amendment may be waived. The SECOND, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," is a personal privilege which may be waived. [Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, 4 Ann.Cas. 773.] The THIRD, "nor shall [any person] be compelled in any Criminal Case to be a witness against himself," may also be waived. Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448.] The FOURTH, "nor [shall] [any person] be deprived of life, liberty, or property, without due process of law," allows, but does not require, a person to defend his rights, hence he may waive them. The same is true of the FIFTH provision, "nor shall private property be taken for public use, without just compensation." One may give his property for public use and waive the provision also.

Not only may all the other provisions in the Fifth Amendment be waived, but it has been clearly established that the accused may waive the provisions for his protection in Amendment Article VI. [See United States v. Gill, D. C., 55 F.2d 399, wherein the decisions have been carefully collected and set out.] It seems thoroughly established that an intelligent accused may waive any constitutional right that is in the nature of a privilege to him, or that is for his personal protection or benefit.

We think that the first provision in the Fifth Amendment was also intended as a protection to the individual to the same extent as were the other four provisions in the Article, and that each provision therein may be waived as fully as the accused may waive the rights in the Sixth Amendment.

It may be noted in passing that the language of the pertinent part of the amendment is that "No *person* shall be held to answer"—not that "No *court* shall hold any person to answer", as would likely have been the language had the provision been intended to be a limitation on the jurisdiction or the power of the court instead of a privilege for the protection of the individual. An impecunious accused, unable to furnish bail, should not be required to languish in the common jail, with nothing to do but to gripe and grow mean in association with others evilly inclined while waiting for the grand jury to convene. He should be, and is, accorded the privilege of consenting to the filing of an information so that he could enter his plea thereto and begin paying his debt to society instead of waiting for the grand jury to convene—which in some districts meets only twice a year.

The right of one who has no defense and does not care to offer one speedily to begin the service of his sentence is an important right. The defendant is entitled to a speedy trial, and the sentence is a part of the trial. The accused who wishes to waive a formal trial is entitled also to secure, if he desires, a speedy sentence, in which situation the rules will implement or augment the Sixth Amendment in providing for a speedy trial to an accused who seeks, by way of a trial, nothing more than the prompt imposition of such sentence as the Court deems appropriate to his offense.

The baneful effect of keeping young, first offenders in the common jail in company with case-hardened criminals has long since had legislative attention, noticeably in the Federal Juvenile Delinquency Act, 18 U.S.C.A. § 921 et seq., where, on consent of the parents, an information may be lodged against a juvenile even though the offense be an infamous crime. Under that Act not only has the provision in the Constitution for a speedy trial been implemented and augmented, but the juvenile defender can be spared weeks and months of close association with criminals of evil purpose. The filing of an information under that Act was upheld in an excellent opinion in United States v. Gill, supra. We approve the reasoning in that case and think that it is applicable to the case at bar.

The judgment of the lower Court is affirmed.