2001 ME 155

**Dorothy HAILU et al.**

v.

**Gordon D. SIMONDS, Trustee.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2001.

Decided: Nov. 5, 2001.

Thomas H. Kelley (orally), Rachelle A. Parise, Pine Tree Legal Assistance, Inc., Portland, for plaintiffs.

Timothy H. Norton (orally), Kelly, Remmel & Zimmerman, Portland, for defendant.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Gordon Simonds appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) finding that he illegally evicted Dorothy Hailu and Terry Mihill from his property. Simonds contends that (1) his property qualifies as a "lodging house" and is therefore exempt from the requirements of the forcible entry and detainer statute, and (2) damages were improperly awarded to Mihill based on insufficient evidence of causation. We find no error and affirm the judgment.

[¶ 2] Gordon D. Simonds is trustee of the R.G. Simonds Trust, which owns and manages a twelve-unit house on Pine Street in Portland. Simonds contracted with Dorothy Hailu and Terry Mihill by means of a document entitled, "Apartment Sharing and Room Rental Lease Agreement" to rent one of the apartments to them on a weekly basis beginning in March of 1998. The agreement described Simonds as the "landlord" and Hailu and Mihill as "tenants."

[¶ 3] The apartment consisted of one furnished room with a bed, dresser, cabinet, table, television, couch, refrigerator, and telephone. Simonds provided a set of sheets, a pillow, a blanket, and a comforter, but Hailu and Mihill were responsible for laundering the linens and obtaining any other linens they needed. No bathroom, running water, or kitchen facilities were supplied in the room, so Hailu and Mihill shared a common bathroom and kitchen area with the other tenants on their floor. The kitchen area consisted of a microwave, toaster oven, and coffee machine, but the toaster oven and coffee machine were not always available. These common areas were cleaned and maintained by Simonds, but Hailu and Mihill were responsible for cleaning their room. The weekly rental included heat, electricity, cable television service, and local phone service. Although the rooms are rented on a weekly basis, Simonds testified that he attempts to rent to tenants who will stay for longer periods. A Certificate of Occupancy issued by the City of Portland Department of Building Inspection in 1994 approved the property for residence as a "lodging house."

[¶ 4] By December of 1998, Hailu and Mihill had fallen behind in their rent. Simonds obtained a writ of possession utilizing the forcible entry and detainer procedure in 14 M.R.S.A. § 6005 (Supp.2000). Before Simonds executed the writ, however, he reached an agreement with Hailu and Mihill whereby Hailu and Mihill were permitted to remain in the room, but agreed to continue paying their weekly rent with additional payments for the back rent due. In September of 1999, although Hailu and Mihill had made some additional payments, they had also missed other payments and had fallen even further behind

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

in the rent payments. Simonds attempted to execute the writ of possession he had obtained in December of 1998, but Hailu and Mihill were granted an injunction by the District Court (Portland, *Goranites, J.*) preventing Simonds from executing on the writ, the court concluding that because rent was paid and accepted after the writ was issued, a new tenancy had been created.

[¶ 5] On the evening of October 15, 1999, without prior notice, Simonds padlocked the door to Hailu and Mihill's room while they were out. Included among the possessions that could not be accessed were Mihill's epilepsy medication and his identification to refill the prescription for the medication. As a result of being unable to access his medication, Mihill went to the emergency room twice within the next week for treatment of epileptic seizures.

[¶ 6] Hailu and Mihill filed a complaint in the Superior Court seeking declaratory or injunctive relief and damages for, among other allegations, illegal eviction and intentional and negligent infliction of emotional distress. Simonds counterclaimed for rent due and incidental charges. Following a jury-waived trial, the court rejected Simonds' contention that his property qualified as a lodging house and entered judgment for Hailu and Mihill on their claim of illegal eviction. The court also awarded Hailu $750 as damages on her claim of intentional infliction of emotional distress and awarded Mihill damages of $3000 on his claim of intentional infliction of emotional distress. The court found for Simonds on his counterclaim for unpaid back rent and assessed $1047 in damages. Simonds filed this appeal.

[¶ 7] Title 14 M.R.S.A. sections 6001–6016 (1980 & Supp.2000) detail the forcible entry and detainer (FED) process by which a landlord may evict a tenant. Specifically, 14 M.R.S.A. § 6005 (Supp.2000) permits a landlord to obtain a writ of possession in the District Court, which may be served upon a defaulting tenant, who then has forty-eight hours to vacate the premises before the tenant is considered a trespasser. 14 M.R.S.A. § 6005 (Supp.2000). Simonds concedes that he did not follow these procedures in removing Hailu and Mihill from their room.

[¶ 8] Simonds contends, however, that he is not *required* to follow these procedures because the Pine Street property is a lodging house within the meaning of 30–A M.R.S.A. § 3838 (Supp.2000) and is therefore exempt from FED statutory requirements.[1] A lodging house is defined as "a house where lodgings are rented," but does not include houses where lodgings are rented to less than five lodgers; dormitories of charitable, educational, or philanthropic institutions; or emergency lodgings for public gatherings. 30–A M.R.S.A. § 3801 (1996). There is no dispute that Hailu and Mihill did not pay the rent. The issue presented is whether Simonds' property is a lodging house, and is therefore subject only to the requirements of 30–A M.R.S.A. § 3838 when a lodger is ejected, or whether Simonds' property is rental property subject to the FED process set out in 14 M.R.S.A. §§ 6001–6016 when a tenant is evicted. The interpretation of a statute is a matter of law that we review de novo. *Great Northern Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 14, 770 A.2d 574, 580. The trial court's findings of fact, however, are accorded def-

---

1. "An innkeeper or campground owner ... may eject from the hotel, lodging house or campground premises ... [a]ny person who is unwilling or unable to pay for accommodations and services of the hotel, lodging house or campground." 30–A M.R.S.A. § 3838 (Supp.2000).

**4**

erence and are vacated only if they are clearly erroneous. *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600.

 [¶ 9] In this case, the trial court concluded that Simonds' Pine Street property was not a lodging house and therefore that compliance with the forcible entry and detainer statutory process was required in order to remove Hailu and Mihill from the property. Although the property retains qualities that resemble both a lodging house and regular rental property, the court found that the arrangement between the parties more closely resembled a tenancy than that of innkeeper and lodger.[2] The agreement between the parties was called a "lease" and referred to Hailu and Mihill as "tenants" and Simonds as the "landlord"; Simonds maintained no guest register, *see* 30–A M.R.S.A. § 3822(1) (1996); Simonds was not licensed as an innkeeper, *see* 22 M.R.S.A. § 2492 (1992); Simonds did not post room rates, *see* 30–A M.R.S.A. § 3802(1) (1996); there was a virtual lack of kitchen facilities provided to the renters in Simonds' property; and Hailu and Mihill had an extended stay in Simonds' property. Moreover, the fact that Simonds *had* already used or attempted to use the FED process to evict Hailu and Mihill, first in December of 1998 when he obtained a writ of possession, and again in September of 1999 when he attempted to execute that writ, undermines his contention that he has the right to simply eject guests. In view of the facts found by the court, we cannot say that the court erred in concluding that the Pine Street property was not a lodging house within the meaning of 30–A M.R.S.A. § 3838.

 [¶ 10] Simonds also contends that damages were improperly awarded to Mihill because there is insufficient evidence that Simonds' eviction caused Mihill's injuries. Our review of the record discloses adequate evidence of a nexus between the unlawful eviction and the pain, suffering, and emotional distress suffered by Mihill, who was without access to his medication. *See Vogt v. Churchill*, 679 A.2d 522, 524 (Me.1996). Thus, we also leave undisturbed the court's award of damages to the parties.

The entry is:

Judgment affirmed.

---

2. We recognize that the 1994 Certificate of Occupancy issued by the City of Portland pursuant to the Portland Zoning Ordinance determined that the Pine Street property qualifies as a lodging house. Nevertheless, such Certificate of Occupancy determinations are made pursuant to a zoning ordinance with the purpose of regulating land use. Such a determination is not conclusive when, as here, the issue is whether or not the property is a lodging house pursuant to a state statutory provision that outlines the rights and responsibilities of lodging house innkeepers in ejecting guests. *See Moyer v. Bd. of Zoning Appeals*, 233 A.2d 311, 318 (Me.1967).